## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION
1750 New York Avenue NW, 6th Floor
Washington, DC 20006

        Plaintiff,

vs.

INTERNATIONAL BOARD OF
DIRECTORS OF THE UNITED
TRANSPORTATION UNION; UNITED
TRANSPORTATION UNION,

        Defendants.

Civil No.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION alleges:

### INTRODUCTION

1. This is an action for declaratory relief pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

2. In May 2007, the Sheet Metal Workers' International Association ("SMWIA") and the United Transportation Union ("UTU") entered into an agreement to merge their separate labor unions into a new labor union – The International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART"). The Merger Agreement was subsequently approved by the General Executive Council of SMWIA and the Board of Directors of UTU, and then overwhelmingly ratified by UTU's membership. The merged union – SMART – is to become operational on January 1, 2008.

1

3. The UTU's Constitution and the Merger Agreement vest in the UTU Board of Directors the authority and responsibility to implement the merger between SMWIA and UTU. However, members of the UTU Board of Directors, and several recently-elected officers of UTU, now dispute the validity of the Merger Agreement, including the Agreement's requirement that any dispute or controversy arising out of the Merger Agreement be resolved through binding arbitration.

4. A declaration of the validity of the Merger Agreement is necessary to prevent the UTU Board of Directors and UTU's newly-elected officers from avoiding their duty to implement the merger between the unions. Declaratory relief is also necessary to ensure that any disputes over the unions' agreement to merge are resolved through binding arbitration, as provided in the Merger Agreement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this matter pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185(a). The Merger Agreement is a "contract between labor organizations" within the meaning of Section 301(a).

6. Venue lies within this judicial district pursuant to Section 301 of the LMRA, 29 U.S.C. § 185(a).

## PARTIES

7. Plaintiff SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION ("SMWIA") is a labor organization representing employees in industries affecting commerce within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(2). SMWIA has its headquarters in Washington D.C. and provides representation to employees who work in this judicial district.

8. Defendant UNITED TRANSPORTATION UNION ("UTU") is a labor organization representing employees in industries affecting commerce within the meaning of Section

2

2(5) of the LMRA.  UTU has its headquarters in Cleveland, Ohio and maintains an office in this judicial district.

9.  Defendant INTERNATIONAL BOARD OF DIRECTORS OF THE UNITED TRANSPORTATION UNION ("UTU Board of Directors") is an 11-member organ of the UTU, created under Article 2 of the UTU Constitution.  Pursuant to Article 23 of that Constitution, the UTU Board of Directors has the authority and responsibility to "consider and implement plans of unification, affiliation, or merger with another labor union."

## COMMON ALLEGATIONS

### Ratification of the Merger Agreement

10. The Merger Agreement that is the subject of this action is the product of many years of work and negotiation.  Beginning in late 2004, Paul C. Thompson, the International President of UTU, began discussions with SMWIA's General President, Michael J. Sullivan, over the possible affiliation or merger of the two unions.

11. Leadership of the two unions held initial meetings to discuss a possible merger in 2005. Present at these meetings were the highest-ranking officers of SMWIA, including Mr. Sullivan; Jay Potesta, a General Vice President of SMWIA; and Dewey Garland, SMWIA's Rail Division Director, among others.  UTU was represented at these meetings by its highest ranking officers, including International President Paul C. Thompson, International Assistant President Richard Marceau, Vice President Carl Vahldick and Vice President Roy G. Arnold. Meetings between the leadership of SMWIA and UTU continued through 2006 and early 2007.

12. In May 2007, the ranking officers of UTU and the SMWIA entered into a Merger Agreement "to merge their separate organizations into a consolidated labor organization." A copy of the Merger Agreement, as subsequently ratified by both unions, is attached as

3

Exhibit A to this Complaint and fully incorporated herein by reference. The Merger Agreement sets forth both the process by which the merger between SMWIA and UTU is to be ratified and the substantive terms of that merger upon ratification.

13. The Merger Agreement provides that the merger of SMWIA and UTU into a new union – SMART – shall be effective upon the approval of the Merger Agreement and the SMART Constitution by the General Executive Council of SMWIA and the UTU Board of Directors, and upon the ratification of the same by UTU's membership. The Merger Agreement provides that its interpretation and performance are governed by the laws of the District of Columbia.

14. The Merger Agreement defines SMART's Constitution to be the SMWIA Constitution, but provides that the "UTU Constitution will become Article 21B of the SMART Constitution to the extent not in conflict with the current SMWIA Constitution or the terms of this Agreement."

15. The Merger Agreement does not attempt to resolve all potential conflicts between the UTU Constitution and the SMWIA (and later SMART) Constitution, but rather sets forth a process through which such conflicts will be resolved. Section III of the Merger Agreement provides that any dispute over whether a provision of the UTU Constitution is in conflict with the SMWIA (and after January 1, 2008, the SMART) Constitution that cannot be resolved by the General President of SMWIA (and after January 1, 2008, of SMART) and the International President of UTU (and after January 1, 2008, the SMART President, Transportation Division) will be referred to binding arbitration.

16. On June 10, 2007, prior to the UTU's Regional Meeting in Kansas City, Missouri, the UTU Board of Directors met and discussed the Merger Agreement. SMWIA General President Sullivan was present and answered questions posed by members of the Board of Directors about the Merger Agreement and about the SMWIA.

4

17. On June 11, 2007, the UTU Board of Directors voted unanimously to approve the Merger Agreement and the SMART Constitution defined therein. The Board of Directors also voted to submit the merger to a vote of the UTU membership, as required by the Merger Agreement.

18. On June 13, 2007, the General Executive Council of SMWIA voted to approve the Merger Agreement and the SMART Constitution defined therein.

19. Between July 17, 2007 and August 7, 2007, UTU's membership voted on the proposed merger. The ratification vote was overseen by the American Arbitration Association, which certified the results on August 8, 2007. The results were overwhelming: 8,625 (71%) of the tallied votes favored merger, while only 3,472 (29%) were against merger.

20. With the results of the UTU membership vote certified, merger of the two unions was completed. According to the terms of the Merger Agreement, the new union – SMART – will become operational on January 1, 2008.

### Opposition to the Merger

21. Although the merger was unanimously approved by the UTU Board of Directors in June 2007, and overwhelmingly approved by UTU's membership, several recently-elected UTU officers and members of the UTU Board of Directors now dispute the validity of the Merger Agreement.

22. At UTU's quadrennial convention in August 2007, UTU President Paul Thompson and UTU Assistant President Richard Marceau did not run for re-election. Their terms in office end on January 1, 2008. Paul Thompson and Richard Marceau support the merger of SMWIA and UTU.

23. At the 2007 UTU Convention, UTU Vice President Malcolm B. ("Mike") Futhey Jr. was elected UTU International President and UTU Vice President Arty Martin, III was elected UTU Assistant President. Pursuant to the Merger Agreement, when Futhey and

5

Martin take office on January 1, 2008, they will become, respectively, President of the SMART Transportation Division and SMART General Vice President. Futhey is currently a member of the UTU Board of Directors. When he assumes the office of UTU Assistant President, Martin will become a member of the UTU Board of Directors.

24. At the 2007 UTU Convention, Kim N. Thompson was elected UTU General Secretary and Treasurer. His term began immediately after the Convention and he currently serves in that capacity. As General Secretary and Treasurer, Kim Thompson is a member of the UTU Board of Directors.

25. Roy Arnold is currently (until January 1, 2008) an International Vice President of UTU and a member of the UTU Board of Directors.

26. On November 7, 2007, Arnold filed internal union charges against UTU President Paul Thompson and UTU Assistant President Richard Marceau, contending that they had violated the UTU Constitution by, *inter alia*, deceiving the UTU Board of Directors into approving the Merger Agreement. A hearing on Arnold's charges is currently scheduled for December 18, 2007. Arnold has designated Arty Martin to be his representative at that hearing.

27. Through these internal charges, Arnold seeks a declaration from the UTU Executive Board, which adjudicates internal union charges, that the UTU membership vote ratifying the Merger Agreement, and thus the Merger Agreement itself, are void.

28. Through these internal charges, Arnold also seeks the immediate removal of UTU President Paul Thompson and UTU Assistant President Marceau from office.

29. Plaintiff is informed and believes, and thereupon alleges, that if the UTU Executive Board removes President Paul Thompson and UTU Assistant President Marceau from office, they will be immediately replaced in these positions by UTU President-elect Futhey and UTU Assistant President-elect Martin.

30. On December 4, 2007, Arnold filed a lawsuit the United States District Court for the Southern District of Illinois (the "Illinois lawsuit") contending, *inter alia*, that the UTU membership vote ratifying the Merger Agreement, and thus the Merger Agreement itself, are void.

31. In late November 2007, five current members of the UTU Board of Directors provided affidavits to plaintiffs in the Illinois lawsuit stating that they had been misled by UTU President Paul Thompson into approving the Merger Agreement. The members of the UTU Board of Directors who provided such affidavits are: UTU Vice President Futhey, UTU General Secretary and Treasurer (and then-Vice President) Kim Thompson, UTU Vice President Arnold, UTU Canadian Legislative Director Tim Secord, and UTU Vice President Bruce Wigent. A sixth affiant, Daniel Edward Johnson III, was a member of the UTU Board of Directors and served as General Secretary and Treasurer at the time of approval.

32. Each of the affidavits signed by these Board members alleges, in substance, that the UTU Board of Directors approved the Merger Agreement based upon misrepresentations by UTU President Paul Thompson and other, unnamed UTU staff members. Each affidavit alleges that President Paul Thompson represented that the UTU Constitution would be incorporated unchanged into the Constitution of the merged union, that such representation was false, and that the UTU Board of Directors would not have approved the Merger Agreement absent this representation.

33. UTU Board of Directors members Futhey, Kim Thompson, Arnold, Secord, Wigent and then-member Johnson claim that they were misled despite the plain language of the Merger Agreement, which provides that the UTU Constitution will become part of the Constitution of the merged union only "to the extent not in conflict with the current SMWIA Constitution or the terms of this Agreement" and which sets forth a procedure,

7

including binding arbitration, for the resolution of disputes over which portions of the UTU Constitution will survive the merger.

34. On December 3, 2007, officers of SMWIA and of UTU held a meeting in Washington D.C. to discuss the status of the merger, in light of Defendant Arnold's internal union charges. Present at this meeting were SMWIA General President Sullivan, SMWIA General Secretary-Treasurer Joseph J. Nigro, SMWIA Assistant to the General President Richard McClees, SMWIA Rail Division Director Dewey Garland, Futhey, Martin, Kim Thompson, and UTU Vice Presidents Roy G. Boling and Costantino ("Tony") Iannone and UTU National Legislative Director James Brunkenhoefer.

35. At this meeting, Futhey, Martin, and Kim Thompson stated that they were dissatisfied with the terms of the Merger Agreement and stated that UTU President Paul C. Thompson had misrepresented the terms of the Merger Agreement to them prior to its approval. Futhey, Martin, and Kim Thompson refused to state which specific portions of the Merger Agreement they disputed and refused to provide written assurances that they would comply with the terms of the Merger Agreement.

36. Plaintiff is informed and believes, and thereupon alleges, that Futhey and Kim Thompson were aware of the imminent filing of the Illinois lawsuit at the time of the December 3, 2007 meeting. At no point during this meeting did Futhey or Thompson disclose this fact to SMWIA leadership. Nor did Futhey or Thompson disclose that they had provided affidavits in support of the plaintiffs' position in the Illinois lawsuit.

## CLAIM FOR DECLARATORY RELIEF

### (29 U.S.C. § 185(a))

37. The allegations contained in Paragraphs 1 through 36 are incorporated herein.

38. Through their actions, a majority of the Board of Directors who held office at the time the merger was ratified, and at least five members of the current UTU Board of Directors and

at least three members who will hold that office on and after January 1, 2008, have demonstrated their opposition to the merger of SMWIA and UTU and their unwillingness to abide by the terms of the Merger Agreement. The current or future Board members are UTU Vice President and President-elect Futhey, UTU Assistant President-elect Martin (upon assumption of that position), UTU General Secretary and Treasurer Kim Thompson, UTU Canadian Legislative Director Secord, UTU Vice President Arnold (until January 1, 2008), and UTU Vice President Wigent.

39. Should the UTU Executive Board remove current UTU President Paul Thompson or UTU Assistant President Richard Marceau prior to January 1, 2008, the aforementioned members of the UTU Board of Directors will form a majority of Board members as of that date.

40. The Merger Agreement, and the UTU Constitution, require the UTU Board of Directors to take certain actions necessary to carry out the merger of SMWIA and UTU, including but not limited to the transfer of the assets and property of UTU to SMART and the execution and delivery of deeds, documents, and other instruments.

41. Absent a declaration from this Court that the Merger Agreement is valid and binding, Defendant UTU Board of Directors and UTU officers and officers-elect Futhey, Martin, and Kim Thompson will fail to take such necessary actions.

42. The Merger Agreement requires disputes and controversies arising out of the Merger Agreement, including disputes as to the scope and effect of the Merger Agreement, to be submitted to final and binding arbitration.

43. Absent a declaration from this Court that the Merger Agreement is valid and binding, Defendant UTU Board of Directors and UTU officers and officers-elect Futhey, Martin, and Kim Thompson will refuse to submit disputes and controversies to final and binding arbitration.

WHEREFORE, Plaintiff SMWIA prays:

1.    For a declaration from this Court that the Merger Agreement is valid and that all disputes concerning the implementation of the Agreement are subject to arbitration as provided therein;

2.    For Plaintiff's attorneys fees and costs herein; and

3.    For such other and further relief as the Court deems just and proper.

Dated:  December 11, 2007                  Respectfully submitted,

_____
Michael T. Anderson (DC No. 459617)
Arlus J. Stephens (DC No. 478938)
Davis, Cowell & Bowe LLP
1701 K Street NW, Suite 210
Washington, DC 20006
(202) 223-2620; (fax) (202) 223-8651

Richard G. McCracken (CA No. 62058)
Paul L. More (CA No. 228589)
Davis Cowell & Bowe LLP
595 Market Street, Suite 1400
San Francisco, California 94105
(415) 597-7200; (fax) (415) 597-7201

Attorneys for SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION

Sheet Metal Workers' International Association

v.

International Board of Directors of
the United Transportation Union, at al.

# EXHIBIT "A"

Signed copy

<u>**MERGER AGREEMENT**</u>

Between

**SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, AFL-CIO, CLC**

And

**UNITED TRANSPORTATION UNION, AFL-CIO, CLC**

## PREAMBLE

This Agreement is entered into by and between Sheet Metal Workers International Association, AFL-CIO, CLC (SMWIA) and the United Transportation Union, AFL-CIO, CLC (UTU).

In entering into this Agreement, UTU and SMWIA recognize that they share common objectives and purposes, including a mutual desire to improve the living and working conditions of their members and to represent them with respect to all terms and conditions of their employment and to promote the well-being of their members and their families.

The fundamental purpose of this agreement is to unite and strengthen the members of the UTU and the SMWIA for more effective bargaining with the employers and for more effective organizing in the affected industries.

The officers of both organizations have met and negotiated this agreement in an atmosphere of good will and respect, with the firm conviction that combining the two organizations' members and their respective resources will enable the union more effectively to secure for its members continued substantial progress in their quest for a better standard of living. Each organization recognizes the contribution of the other to the welfare of the workers each is proud to represent. Above all, they know that unity between the two organizations will bring fresh strength to the affected industries. It will allow greater effort and resources to be directed toward the essential tasks of improving the wages, hours, working conditions, and security of all workers within the jurisdiction of the merged union. Unity of the two unions will also further gains in the areas of legislation, political action, human relations, and community affairs.

It is then these principles that have guided the parties in entering into this agreement.

## I. Agreement to Merge

SMWIA and UTU, on their own behalf and on behalf of their affiliates, hereby enter into this agreement to merge their separate organizations into a consolidated labor organization to be known as the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART"), under the terms and conditions of this Merger Agreement and of the Constitution of SMART, which includes the current UTU Constitution in conformity with the SMWIA Constitution as Article 21B. As used herein, "affiliate" means a local union or council affiliated with SMWIA or a subordinate body of UTU. The UTU Insurance Association is not an affiliate within the meaning of this Agreement and shall remain a separate, independent organization and shall not be a part of SMART.

## II. Effective Date

Upon approval of this Merger Agreement and of the SMART Constitution (together the "Merger Documents") by the General Executive Council of SMWIA and the Board of Directors of UTU, and by the membership of UTU prior to its regular convention to be held in August 2007, and upon certification of those results by the respective International General Secretary-Treasurers, the merger of SMWIA and UTU to form SMART shall be effective. SMART shall be created as an unincorporated association under the laws of the District of Columbia, effective January 1, 2008, which shall be the effective date of the merger and is hereafter referred to as the "Effective Date." If either SMWIA or UTU fails to approve the Merger Documents by the procedures stated above, they shall be deemed terminated and of no force and effect.

## III. The Constitution and the Merger Agreement

SMART shall be governed by the SMART Constitution, which shall be the SMWIA Constitution amended to implement the provisions of this Agreement. This Merger Agreement is intended only to serve as a mechanism for integration of the two organizations and as a foundation for that Constitution. In the event of a conflict between any provision of this Merger Agreement and any provision of the SMART Constitution, the latter shall govern, and if any dispute should arise that cannot be resolved by the General President of SMWIA (and SMART) and the International President of UTU (SMART President, Transportation Division), it shall be referred to arbitration as provided in Article XII.  The Merger Agreement shall expire and have no further legal force and effect on September 1, 2011 or when three-fourths of the SMART General Executive Council vote to terminate it, whichever date occurs sooner, unless the SMART General Executive Council has voted to amend this provision in accordance with Article XIII of this Agreement, below.


## IV. Headquarters

A.  Commencing on June 1, 2010, the International Headquarters of SMART shall be located in Washington, D.C. or its vicinity. It shall thereafter be designated in accordance with the SMART Constitution.

B.  The General President of SMART shall determine what functions shall be located at the International Headquarters, and what functions shall be performed elsewhere, subject to the approval of the General Executive Council.

**V. Officers and General Executive Council**

SMART shall have a General President and a General Secretary-Treasurer. It shall have 17 General Vice-Presidents of whom 6 will come from UTU including its International President, Assistant President, General Secretary and Treasurer, National Legislative Director and the two (2) senior Vice Presidents elected at the 2007 UTU Convention. The position of Assistant President and General Secretary and Treasurer shall be subject to attrition, and after attrition of each as described in Article VII, the next senior Vice Presidents will become SMART General Vice Presidents. The 17 General Vice Presidents shall constitute the SMART General Executive Council.

A Transportation Division will be created. All full-time UTU Vice Presidents elected at the 2007 Convention will become International Representatives and Organizers of SMART with functions of current UTU officers. The Division will be led by the UTU International President, whose title will be "President, Transportation Division." Also, within this Division will be the Bus Department, Yardmasters Department and Airlines Department. The SMART Rail and Shipyard Department and Transportation Division will negotiate national rail contracts together when applicable.

After the Effective Date, the UTU positions referred to hereinabove shall be filled by election in the manner prescribed in Section VI of this Agreement below, but only those members who hold active transportation seniority with a rail carrier, bus line or air line will be eligible to be nominated for any of these positions. If any of the original incumbents in these positions resigns, retires or dies before completing the term of office, the vacancy shall be filled from among the

other officers elected at the final UTU convention in 2007, in accordance with the UTU Constitution. The General President, General Secretary-Treasurer and the remaining 11 General Vice-Presidents shall be the SMWIA officers holding these positions immediately before the Effective Date. After the Effective Date, these positions shall be filled by election in the manner prescribed in the SMART Constitution.


## VI.  Transportation Division Convention

The Transportation Division shall hold its first convention immediately before the first SMART general convention in 2011. The delegates to the Transportation Division convention from local unions affiliated with the Transportation Division shall be the delegates to the SMART General convention. The Transportation Division convention shall by secret ballot elect officers for the positions listed in Article 21B of the SMART Constitution, as set forth in Article I.  The Transportation Division convention may also recommend amendments to the SMART Constitution or recommend resolutions affecting members of the Transportation Division or of SMART generally, which shall be forwarded to the Constitution and Resolutions Committees, respectively, of the SMART general convention. The delegates to the Transportation Division convention may take up any other items of interest to the members of the Transportation Division, including education and legislative matters.


## VII.  Local Unions, Joint Boards and Other Chartered Bodies

Each chartered body of either SMWIA or UTU shall retain its charter as of the date of its original issue and become, by virtue of the merger, a chartered body of SMART. Should the charter numbers of local unions in SMART and UTU be the same, the Presidents may assign additional

identification to avoid confusion.  The Presidents shall issue new charters to all SMWIA and UTU chartered bodies which will contain the date of their original chartering by SMWIA or UTU or their predecessor bodies. All future charters shall be issued in the name and authority of SMART.

The by-laws of the affiliates of SMWIA and UTU shall remain in full force and effect and, for a period of two years from the Effective Date, except to the extent that they conflict directly with the SMART Constitution. Under the supervision of the General President, all affiliates shall bring their by-laws into compliance with the SMART Constitution within two years of the Effective Date.

Current officers of the affiliates of SMWIA and UTU shall, upon the effective date of the merger, continue to serve in their elected capacities. The UTU's Assistant President, Secretary-Treasurer and 9th and 10th Vice Presidents as currently provided for in the existing UTU Constitution will attrite by the end of their term (2011).

After the Effective Date, all financial obligations of chartered bodies owed to SMWIA or to UTU shall be obligations of the chartered bodies owed to SMART.

## VIII.  Employees and Employee Benefits

No former SMWIA or former UTU employee who is employed by SMART shall experience any reduction in salary or allowances as a result of the merger.  All former SMWIA or former UTU employees who are employed by SMART shall be credited with their service for SMWIA or UTU for all vacation and benefit purposes.  Subject to approval of the appropriate unions for

union-represented SMWIA or former UTU employees, all former UTU employees with at least three years of service who desire to be employed by SMART after the discontinuance of UTU headquarters operations in Cleveland as of June 1, 2010 shall be permitted to transfer to the SMART International Headquarters for service in any vacancies for which they are qualified and shall have their service with UTU credited for seniority purposes. These employees shall be reimbursed for reasonable relocation expenses.

All persons employed by SMWIA or UTU prior to the Effective Date shall continue to be covered by the current staff benefit programs of their respective Unions, such as pension, health insurance and life insurance. All of the existing benefit programs for staff will continue. Under the supervision of the General President and the President, Transportation Division, former employees of UTU who continue employment with SMART shall become participants in the benefit plans that were sponsored by SMWIA by no later than January 1, 2011 and employee benefit plans sponsored by UTU shall be terminated or, in the case of the pension plan, benefit accrual shall be frozen, as of that same date. All such former UTU employees shall at that same date become vested immediately in the pension benefits they accrue under the SMWIA-sponsored pension plans and shall have no waiting period for eligibility for benefits under the SMWIA-sponsored health plan. Nothing in this Agreement shall be construed as a legal requirement for continuation of any benefit program for any period of time after the Effective Date, except where such legal obligation already exists.

Six of the officers elected at the final UTU Convention in 2007 will become General Vice-Presidents as provided in Article V of this Agreement. The International President, Assistant

President, General Secretary and Treasurer and National Legislative Director of UTUIA will be paid by UTUIA with respect to work allocable to UTUIA. SMART shall consider employment of former employees of UTU, provided that they accept employment at the International Headquarters on terms and conditions substantially equal to or better than the average economic package enjoyed by them from the date of this Agreement until immediately before the Effective Date. These employees shall be reimbursed for reasonable relocation expenses.

## IX. Membership

All members of SMWIA and UTU shall be members of SMART upon the Effective Date. Wherever the enjoyment of any right or privilege is based on length of membership in SMART, previous membership in SMWIA or UTU shall be deemed membership in SMART. Members of SMWIA or UTU shall be deemed members of SMART without payment of any initiation or other membership fee, except membership obligations due and unpaid to either SMWIA or UTU upon the Effective Date.

All financial obligations of members of SMWIA or UTU for any period prior to the merger shall be payable on the basis of the applicable provisions of the Constitutions of the respective Unions and the constitutions and bylaws of the subordinate bodies of the respective Unions then in effect.

Membership dues to SMART shall be assessed in accordance with the SMART Constitution. The International portion of dues paid to SMART by former SMWIA affiliates shall be in accordance with the former SMWIA Constitution. The International portion of dues paid to SMART by former UTU affiliates (subordinate bodies) shall be the same as the financial

obligations due to UTU International Union from its members under the former UTU Constitution, subject to Article XII.

## X. Property

On the Effective Date, all the property, real, personal and mixed, and all right, title, and interest, either legal or beneficial, in any monies, funds, or property, tangible and intangible, of SMWIA and UTU, including, but not limited to, their respective separate names, trademarks, copyrights, labels, registrations, emblems, union shop cards, all claims and debts, known or unknown, now due or accruing in the future to each of them, all the rights, privileges and powers, and every other interest of each of them, of whatever kind or nature whatsoever shall, by virtue of the merger of SMWIA and UTU, be transferred to and vested in SMART. Title to any property, real, personal or mixed, legally or beneficially vested by deed or otherwise in SMWIA or UTU shall not be impaired by reason of the merger but shall in all respects be vested in SMART by virtue of the merger. SMART shall, on and after the effective date of the merger, assume and be responsible for all the debts, liabilities, contract obligations, and other obligations of SMWIA and/or UTU. The debts, liabilities, contractual and other obligations assumed hereunder shall, on the effective date of the merger, attach to SMART to the same extent as if the said debts, liabilities, contractual and other obligations were its original undertakings.

The General President and his designees are hereby empowered to take all necessary legal steps on behalf of SMART to amend or change all deeds, bonds, mortgages, titles, certificates, leases, contracts or agreements or other indicia of ownership or legal right or obligation in order to reflect the merger and the transfer of ownership and rights and obligations to SMART. The

Presidents and their designees are further empowered on behalf of SMART to notify all legal entities, government agencies and other forums of the merger and transfer of ownership, rights, obligations and functions to SMART.

It is agreed and understood that in the discussions leading to this merger, both SMWIA and UTU submitted for the other's review a full and complete schedule of assets and liabilities (both actual and contingent). Both SMWIA and UTU waive any claim or potential claim against the other for fraud, duress or concealment.

Upon the Effective Date, the General Funds of SMWIA and UTU shall be merged and shall become the General Funds of SMART. Upon the Effective Date, the Strike and Defense Funds of SMWIA and of UTU shall be merged and shall become the SMART Strike and Defense Fund. Further, any and all other designated funds held as part of the general treasuries of either SMWIA or UTU, except those as to which legal restrictions prevent their unencumbered transfer, shall become part of the general treasury of SMART.

## XI. Rights and Obligations

The separate constitutions of SMWIA and UTU shall continue in effect after the Effective Date for the limited purpose of completing the merger and fulfilling the undertakings of this Merger Agreement and the SMART Constitution. Article 21 of the SMWIA Constitution will become Article 21A of the SMART Constitution. The UTU Constitution will become Article 21B of the SMART Constitution to the extent not in conflict with the current SMWIA Constitution or the terms of this Agreement. To the extent necessary to implement this Merger Agreement, the

General Executive Council of SMWIA and the Board of Directors of UTU shall be deemed to remain in existence, and during such time the officers of each Union shall retain the power, right, privilege, and authority incidental and necessary to carry out this Merger Agreement, including, but not limited to, the power to deal with the property or assets of each such Union, and they shall be authorized and empowered to execute and deliver or cause to be executed and delivered, any necessary deed, document, or other instrument.

Nothing in this Merger Agreement or in the SMART Constitution shall affect the rights of SMWIA or UTU's chartered bodies in and to their respective assets and rights of representation.

SMART shall be deemed to be a consolidation of SMWIA and UTU. The merger of SMWIA and UTU shall not affect, interrupt, or change in any way the continuing status, or the rights or duties with respect to third persons, of either SMWIA or UTU or their affiliates. It shall not impair the status of these organizations in any pending action or proceedings or any right, title, or interest in any property or arising from any deeds, bonds, mortgages, leases, or contracts or agreements of any kind whatsoever, including, but not limited to, recognition agreements and collective bargaining agreements or the continuity or renewal thereof. Nor shall it impair any federal, state, provincial, territorial, or commonwealth certification or any representational rights or any other separate rights or obligations of such organizations under their existing collective bargaining agreements or checkoff authorizations. All authority, power and rights, jurisdictional and otherwise, held by or vested in SMWIA and/or UTU under or in connection with any charter or affiliation with the AFL-CIO and CLC shall be automatically vested in SMART.

The merger of SMWIA and UTU is not intended to affect the existence, continuation, sponsorship, administration or any other aspect of the establishment or operation of any employee welfare or pension benefit plan for employees represented by either SMWIA or UTU or their respective affiliates. As of the Effective Date, SMART shall be deemed the union sponsor of any such plan sponsored by either SMWIA or UTU as of the time immediately before the Effective Date. SMART shall be vested with all powers under the respective trust agreements establishing the trusts holding the assets of such plans which were as of the time immediately before the Effective Date vested in either SMWIA or UTU. All such powers shall be exercised by the General President.

## XII. Arbitration

In the event of any dispute or controversy arising out of or under this Agreement, such dispute or controversy shall be referred to the SMWIA General President and the International President of the UTU (or, if the dispute or controversy arises after the Effective date, the SMART General President and the SMART President, Transportation Division for conference and resolution). If they are unable to resolve the dispute or controversy, it may be submitted by either officer, and no one else, to arbitration by an arbitrator appointed by the President of the AFL-CIO. The decision of such arbitrator on the disputed matter shall be final and conclusive on all parties and may be enforced in any court of competent jurisdiction.

The arbitrator's power shall be limited to the application and interpretation of this Agreement. The arbitrator shall have no power or authority to rescind, alter, amend, or modify any of the provisions of this Agreement.

Arbitration under this agreement shall be the exclusive remedy for any dispute hereunder, and the right to obtain such arbitration shall be a complete defense to any action at law or in court or in any other tribunal to enforce, modify, construe, or assert any right under this Agreement. The arbitrator shall have the power to require the attendance of any party to a dispute hereunder or of any witness whose testimony may be relevant to the arbitration of such dispute and to subpoena books, records, and other instruments relative to such dispute.

Each party will bear its own costs and will share equally the fees and expenses of the arbitration, provided that if the arbitration proceeding occurs after the Effective Date, all costs shall be borne by SMART.

The laws of the District of Columbia shall be deemed to govern the interpretation and performance of this Agreement.

## XIII.  Amendment Procedure

In recognition of the inability to anticipate all future developments, this Merger Agreement may be amended with the approval of the General President, the President, Transportation Division and a vote of seventy-five percent (75%) of the General Executive Council.

**IN WITNESS WHEREOF,** the parties hereto have set their hands and seals this 8th day of *August*, 2007.

By: *Michael J. Sullivan*
    General President

By: *Paul C. Thompson*
       International President

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Sheet Metal Workers' International Association

*1100l*

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___Washington, DC___
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Arlus J. Stephens (DC #478938)
Davis, Cowell & Bowe LLP
1701 K Street NW, Suite 210
Washington, DC 20006
202-223-2620

## DEFENDANTS

International Board of Directors of the United
Transportation Union, et al

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

A

Case: 1:07-cv-02230
Assigned To : Robertson, James
Assign. Date : 12/11/2007
Description: Labor-ERISA

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
    Plaintiff

○ 2 U.S. Government
    Defendant

⊗ 3 Federal Question
    (U.S. Government Not a Party)

○ 4 Diversity
    (Indicate Citizenship of
    Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ○ **A.** *Antitrust* | ○ **B.** *Personal Injury/ Malpractice* | ○ **C.** *Administrative Agency Review* | ○ **D.** *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ **E.** *General Civil (Other)* | **OR** | ○ **F.** *Pro Se General Civil* |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

*2*

| ○ G. *Habeas Corpus/* *2255* | ○ H. *Employment* *Discrimination* | ○ I. *FOIA/PRIVACY* *ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ⊗ K. *Labor/ERISA* *(non-employment)* | ○ L. *Other Civil Rights* *(non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☒ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Action for breach of contract under Section 301 of the LMRA, 29 U.S.C. Section 185

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _ _ _ _ _ _ _ _ _ Check YES only if demanded in complaint **JURY DEMAND:** YES ☐ NO ☒ |
|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  December 11, 2007    SIGNATURE OF ATTORNEY OF RECORD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.