## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION
1750 New York Ave. NW, 6th Floor
Washington, DC 20006

        Plaintiff,

vs.

UNITED TRANSPORTATION
UNION,

        Defendant.

Civil No. 07-2230 (JR)

## FIRST AMENDED COMPLAINT AND
## PETITION TO COMPEL ARBITRATION

Plaintiff SHEET METAL WORKERS' INTERNATIONAL

ASSOCIATION alleges for its First Amended Complaint and Petition to

Compel Arbitration as follows:

## INTRODUCTION

1. This action is brought pursuant to Section 301 of the Labor

   Management Relations Act ("LMRA"), 29 U.S.C. §185, and Section 4 of

   the Federal Arbitration Act ("FAA"), 9 U.S.C. §4.

2. In May 2007, the Sheet Metal Workers' International Association ("SMWIA") and the United Transportation Union ("UTU") entered into an agreement to merge their separate labor unions into a new labor union – The International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART"). The Merger Agreement was subsequently approved by the General Executive Council of SMWIA and the Board of Directors of UTU, and then overwhelmingly ratified by UTU's membership. The merged union – SMART – was to become operational on January 1, 2008.

3. The UTU's Constitution and the Merger Agreement vest in the UTU Board of Directors the authority and responsibility to implement the merger between SMWIA and UTU. However, certain recently-elected officers of the UTU – who comprise only a minority of the Board of Directors -- now dispute the validity of the Merger Agreement, including the Agreement's requirement that any dispute or controversy arising out of the Merger Agreement be resolved through binding arbitration.

4. A declaration of the validity of the Merger Agreement is necessary to prevent the UTU from now avoiding its duty to seek to implement the merger between the unions. Declaratory relief is also necessary to

2

ensure that any disputes over the unions' agreement to merge are resolved through binding arbitration, as provided in the Merger Agreement.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction of this matter pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185(a). The Merger Agreement is a "contract between labor organizations" within the meaning of Section 301(a).

6.  Venue lies within this judicial district pursuant to Section 301 of the LMRA, 29 U.S.C. § 185(a).

## PARTIES

7.  Plaintiff SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION ("SMWIA") is a labor organization representing employees in industries affecting commerce within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(2).  SMWIA has its headquarters in Washington, D.C. and provides representation to employees who work in this judicial district.

8.  Defendant UNITED TRANSPORTATION UNION ("UTU") is a labor organization representing employees in industries affecting commerce within the meaning of Section 2(5) of the LMRA.  UTU has its headquarters in Cleveland, Ohio and maintains an office in this judicial

district.

## COMMON ALLEGATIONS

### Ratification of the Merger Agreement

9. The Merger Agreement that is the subject of this action is the product of many years of work and negotiation.  Beginning in late 2004, Paul C. Thompson, the International President of UTU, began discussions with SMWIA's General President, Michael J. Sullivan, over the possible affiliation or merger of the two unions.

10.    Leadership of the two unions held initial meetings to discuss a possible merger in 2005. Present at these meetings were the highest-ranking officers of SMWIA and the UTU. Meetings between the leadership of SMWIA and UTU continued through 2006 and early 2007.

11.    In May 2007, the ranking officers of UTU and the SMWIA entered into a Merger Agreement "to merge their separate organizations into a consolidated labor organization."  A copy of the Merger Agreement, as subsequently ratified by both unions, is attached as Exhibit A to this Complaint and fully incorporated herein by reference.  The Merger Agreement sets forth both the process by which the merger between SMWIA and UTU is to be ratified and the

substantive terms of that merger upon ratification.

12.     The Merger Agreement provides that the merger of SMWIA and UTU into a new union – SMART – shall be effective upon the approval of the Merger Agreement and the SMART Constitution by the General Executive Council of SMWIA and the UTU Board of Directors, and upon the ratification of the same by UTU's membership. The Merger Agreement provides that its interpretation and performance are governed by the laws of the District of Columbia.

13.     The Merger Agreement defines SMART's Constitution to be the SMWIA Constitution, but provides that the "UTU Constitution will become Article 21B of the SMART Constitution to the extent not in conflict with the current SMWIA Constitution or the terms of this Agreement."

14.     The Merger Agreement does not attempt to resolve all potential conflicts between the UTU Constitution and the SMWIA (and later SMART) Constitution, but rather sets forth a process through which such conflicts will be resolved.  Section III of the Merger Agreement provides that any dispute over whether a provision of the UTU Constitution is in conflict with the SMWIA (and after January 1, 2008, the SMART) Constitution that cannot be resolved by the General

President of SMWIA (and after January 1, 2008, of SMART) and the
International President of UTU (and after January 1, 2008, the
SMART President, Transportation Division) will be referred to binding
arbitration.

15.     The International Board of Directors of the UTU is an 11-
member organ of the UTU, created under Article 2 of the UTU
Constitution. Pursuant to Article 23 of that Constitution, the UTU
Board of Directors has the authority and responsibility to "consider and
implement plans of unification, affiliation, or merger with another
labor union."

16.     On June 10, 2007, prior to the UTU's Regional Meeting in Kansas
City, Missouri, the UTU Board of Directors met and discussed the
Merger Agreement.  SMWIA General President Sullivan was present
and answered questions posed by members of the Board of Directors
about the Merger Agreement and about the SMWIA.

17.     On June 11, 2007, the UTU Board of Directors voted
unanimously to approve the Merger Agreement and the SMART
Constitution defined therein.  The Board of Directors also voted to
submit the merger to a vote of the UTU membership, as required by the
Merger Agreement.

18.     On June 13, 2007, the General Executive Council of SMWIA
voted to approve the Merger Agreement and the SMART Constitution
defined therein.

19.     Between July 17, 2007 and August 7, 2007, UTU's membership
voted on the proposed merger.  The ratification vote was overseen by
the American Arbitration Association, which certified the results on
August 8, 2007.  The results were overwhelming: 8,625 (71%) of the
tallied votes favored merger, while only 3,472 (29%) were against
merger.

20.     With the results of the UTU membership vote certified, merger of
the two unions was completed.  According to the terms of the Merger
Agreement, the new union – SMART – was to become operational on
January 1, 2008.

### Opposition to the Merger

21.     Although the merger was unanimously approved by the UTU
Board of Directors in June 2007, and overwhelmingly approved by
UTU's membership, some elected UTU officers and now-former
members of the UTU Board of Directors now dispute the validity of the
Merger Agreement.

22.     At UTU's quadrennial convention in August 2007, UTU

President Paul Thompson and UTU Assistant President Richard Marceau did not run for re-election. Their terms in office ended on January 1, 2008. Paul Thompson and Richard Marceau supported, and still support, the merger of SMWIA and UTU.

23.     At the 2007 UTU Convention, UTU Vice President Malcolm B. ("Mike") Futhey Jr. was elected President of SMART's Transportation Division, succeeding Paul Thompson as the top executive. Former UTU Vice President Arty Martin, III was elected Assistant President. Pursuant to the Merger Agreement, when Futhey and Martin took office on January 1, 2008, they were to be taking office as officers of SMART. Futhey was then and still is currently a member of the UTU Board of Directors. When he assumed the office of UTU Assistant President, Martin also became a member of the UTU Board of Directors.

24.     At the 2007 UTU Convention, Kim N. Thompson was elected General Secretary and Treasurer. His term began immediately after the Convention and he currently serves in that capacity. As General Secretary and Treasurer, Kim Thompson is also a member of the Board of Directors.

25.     Roy Arnold was, until December 31, 2007, an International Vice

President of UTU and a member of the UTU Board of Directors.

26.      On December 4, 2007, Arnold and three other UTU members filed a lawsuit in the United States District Court for the Southern District of Illinois – which was later transferred for improper venue to the Northern District of Ohio -- ("the Ohio lawsuit") contending that the UTU's members did not get enough information about the proposed merger and thus that the merger should not be allowed to proceed.

27.      In late November 2007, five then-current members of the UTU Board of Directors provided affidavits to plaintiffs in the Ohio lawsuit stating that they now opposed the merger they had previously unanimously approved. The members of the UTU Board of Directors who provided the affidavits were: then-UTU Vice President Futhey, then-UTU General Secretary and Treasurer (and then-Vice President) Kim Thompson, then-UTU Vice President Arnold, then-UTU Canadian Legislative Director Tim Secord, and then-UTU Vice President Bruce Wigent. A sixth affiant, Daniel Edward Johnson III, was a member of the UTU Board of Directors and served as General Secretary and Treasurer at the time of approval.

28.      Each of the affidavits signed by these Board members alleged, in substance, that the UTU Board of Directors approved the Merger

9

Agreement based upon misrepresentations by then-UTU President Paul Thompson and other unnamed individuals. Each affidavit alleged that President Paul Thompson represented that the UTU Constitution would be incorporated unchanged into the Constitution of the merged union, that such representation was false, and that the UTU Board of Directors would not have approved the Merger Agreement absent this representation.

29.     On December 3, 2007, officers of SMWIA and of UTU held a meeting in Washington D.C. to discuss the status of the merger. Present at this meeting were SMWIA General President Sullivan, SMWIA General Secretary-Treasurer Joseph J. Nigro, SMWIA Assistant to the General President Richard McClees, SMWIA Rail Division Director Dewey Garland, Futhey, Martin, Kim Thompson, and UTU Vice Presidents Roy G. Boling and Costantino ("Tony") Iannone and UTU National Legislative Director James Brunkenhoefer.

30.     At this meeting, Futhey, Martin, and Kim Thompson stated that they were dissatisfied with the terms of the Merger Agreement and stated that UTU President Paul C. Thompson had misrepresented the terms of the Merger Agreement to them prior to its approval. Futhey, Martin, and Kim Thompson refused to state which specific portions of

the Merger Agreement they disputed and refused to provide written assurances that they would comply with the terms of the Merger Agreement.

31.     Plaintiff is informed and believes, and thereupon alleges, that Futhey and Kim Thompson were aware of the imminent filing of the Ohio lawsuit at the time of the December 3, 2007 meeting. At no point during this meeting did Futhey or Thompson disclose this fact to SMWIA leadership. Nor did Futhey or Thompson disclose they had provided affidavits in support of the plaintiffs in the Ohio lawsuit.

32.     Subsequently, the court in the Ohio action entered a temporary restraining order on December 27, 2007, prohibiting the merger from proceeding. The Ohio court entered no written order memorializing the reason for the order.

33.     On January 1, 2008, Futhey, Martin and Kim Thompson were to take office as SMART officers. Instead, citing the TRO, they maintained the mantle of UTU officers. They began to issue press releases and other messages to the UTU membership through the UTU's website in which they denigrated the Merger Agreement and stated that the UTU should not merge, thus meaning they would remain as the chief officers of a non-merged union, with higher salaries

11

and greater authority.

34.     On January 4, 2008, Futhey, as chief officer of the non-merged UTU, consented to a preliminary injunction barring the merger until at least February 13, 2008.

35.     On January 16, 2008, seven officers of the non-merged UTU -- James M. Brunkenhoefer, Roy G. Boling, C.A. Iannone, J.R. Cumby, John W. Babler, J.D. Fitzgerald and Victor Baffoni – sought leave to intervene in the Ohio action as named defendants. (President-Emeritus Paul Thompson also sought leave to intervene as a defendant.) The seven officers constitute a majority of the Board of Directors, which has jurisdiction over merger considerations. They informed the Court they believe the UTU's membership vote should be upheld and they were concerned that Futhey would not defend that membership vote.

36.     On January 30, 2008, the proposed Ohio intervenors filed a motion to dismiss the Ohio action on the ground that the federal courts lacked subject matter jurisdiction over the complaint.

37.     On February 1, 2008, the Ohio court declined to rule on the motion to intervene, despite no opposition having been filed, and instead set it for hearing on April 28, nearly three months later.

38.     On February 5, 2008, the Ohio court signed a stipulated order –

12

stipulated between plaintiffs and Futhey – that extends the consent preliminary injunction "from February 13, 2008, until ten days after the Court rules on the pending motion to intervene."

39.    The seven members of the UTU's Board of Directors opposed the proposed stipulated injunction.

## CLAIM FOR DECLARATORY RELIEF

### (29 U.S.C. §185(a) and 9 U.S.C. §4)

40.    The allegations contained in Paragraphs 1 through 39 are incorporated herein.

41.    Through their actions, Futhey, Martin and Kim Thompson have demonstrated their opposition to the merger of SMWIA and UTU and their unwillingness to abide by the terms of the Merger Agreement.

42.    The Merger Agreement requires the officers of the two unions to support the merger and to take actions necessary to facilitate and carry out the merger, including getting all necessary approvals. Notwithstanding these contractual obligations, and indeed in violation of them, the named officers of the non-merged UTU are failing in every way to abide by these obligations.

43.    The Merger Agreement requires disputes and controversies arising out of the Merger Agreement, including disputes as to the scope

and effect of the Merger Agreement, to be submitted to final and

binding arbitration. Absent sanction from an arbitrator or other

appropriate resolver of the disputes, Defendant UTU's chief officers

Futhey, Martin, and Kim Thompson will continue to fail to abide by the

UTU's obligations under the Merger Agreement.

WHEREFORE, Plaintiff SMWIA prays:

1.    For a declaration from this Court that the Merger Agreement is valid

and that all disputes concerning the implementation of the Agreement

are subject to arbitration as provided therein;

2.    For Plaintiff's attorneys fees and costs herein; and

3.    For such other and further relief as the Court deems just and proper.


Dated:  February 11, 2008              Respectfully submitted,



                                        s/ Michael T. Anderson
                                       Michael T. Anderson (DC No. 459617)
                                       Arlus J. Stephens (DC No. 478938)
                                       Davis, Cowell & Bowe LLP
                                       1701 K Street NW, Suite 210
                                       Washington, DC 20006
                                       (202) 223-2620
                                       (Fax) (202) 223-8651

Richard G. McCracken (CA No. 62058)
Paul L. More (CA No. 228589)
Davis Cowell & Bowe LLP
595 Market Street, Suite 1400
San Francisco, California 94105
(415) 597-7200
(Fax) (415) 597-7201

Attorneys for SHEET METAL
WORKERS' INTERNATIONAL
ASSOCIATION

15

## CERTIFICATE OF SERVICE

A true and correct copy of this First Amended Complaint was served on

the following by UPS Overnight Delivery on this 11th day of February, 2008:


      Clint Miller, Esq.
      General Counsel
      United Transportation Union
      14600 Detroit Ave.
      Cleveland, OH 44107

      Counsel for Defendant


                   s/ Arlus J. Stephens
                  Arlus J. Stephens

16

Sheet Metal Workers' International Association

v.

International Board of Directors of
the United Transportation Union, at al.

# EXHIBIT "A"

Signed copy

## <u>MERGER AGREEMENT</u>

Between

### SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, AFL-CIO, CLC

And

### UNITED TRANSPORTATION UNION, AFL-CIO, CLC

## PREAMBLE

This Agreement is entered into by and between Sheet Metal Workers International Association, AFL-CIO, CLC (SMWIA) and the United Transportation Union, AFL-CIO, CLC (UTU).

In entering into this Agreement, UTU and SMWIA recognize that they share common objectives and purposes, including a mutual desire to improve the living and working conditions of their members and to represent them with respect to all terms and conditions of their employment and to promote the well-being of their members and their families.

The fundamental purpose of this agreement is to unite and strengthen the members of the UTU and the SMWIA for more effective bargaining with the employers and for more effective organizing in the affected industries.

The officers of both organizations have met and negotiated this agreement in an atmosphere of good will and respect, with the firm conviction that combining the two organizations' members and their respective resources will enable the union more effectively to secure for its members continued substantial progress in their quest for a better standard of living. Each organization recognizes the contribution of the other to the welfare of the workers each is proud to represent. Above all, they know that unity between the two organizations will bring fresh strength to the affected industries. It will allow greater effort and resources to be directed toward the essential tasks of improving the wages, hours, working conditions, and security of all workers within the jurisdiction of the merged union. Unity of the two unions will also further gains in the areas of legislation, political action, human relations, and community affairs.

It is then these principles that have guided the parties in entering into this agreement.

## I.  Agreement to Merge

SMWIA and UTU, on their own behalf and on behalf of their affiliates, hereby enter into this agreement to merge their separate organizations into a consolidated labor organization to be known as the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART"), under the terms and conditions of this Merger Agreement and of the Constitution of SMART, which includes the current UTU Constitution in conformity with the SMWIA Constitution as Article 21B.  As used herein, "affiliate" means a local union or council affiliated with SMWIA or a subordinate body of UTU.  The UTU Insurance Association is not an affiliate within the meaning of this Agreement and shall remain a separate, independent organization and shall not be a part of SMART.

## II.  Effective Date

Upon approval of this Merger Agreement and of the SMART Constitution (together the "Merger Documents") by the General Executive Council of SMWIA and the Board of Directors of UTU, and by the membership of UTU prior to its regular convention to be held in August 2007, and upon certification of those results by the respective International General Secretary-Treasurers, the merger of SMWIA and UTU to form SMART shall be effective.  SMART shall be created as an unincorporated association under the laws of the District of Columbia, effective January 1, 2008, which shall be the effective date of the merger and is hereafter referred to as the "Effective Date."  If either SMWIA or UTU fails to approve the Merger Documents by the procedures stated above, they shall be deemed terminated and of no force and effect.

### III. The Constitution and the Merger Agreement

SMART shall be governed by the SMART Constitution, which shall be the SMWIA Constitution amended to implement the provisions of this Agreement. This Merger Agreement is intended only to serve as a mechanism for integration of the two organizations and as a foundation for that Constitution. In the event of a conflict between any provision of this Merger Agreement and any provision of the SMART Constitution, the latter shall govern, and if any dispute should arise that cannot be resolved by the General President of SMWIA (and SMART) and the International President of UTU (SMART President, Transportation Division), it shall be referred to arbitration as provided in Article XII. The Merger Agreement shall expire and have no further legal force and effect on September 1, 2011 or when three-fourths of the SMART General Executive Council vote to terminate it, whichever date occurs sooner, unless the SMART General Executive Council has voted to amend this provision in accordance with Article XIII of this Agreement, below.

### IV. Headquarters

A. Commencing on June 1, 2010, the International Headquarters of SMART shall be located in Washington, D.C. or its vicinity. It shall thereafter be designated in accordance with the SMART Constitution.

B. The General President of SMART shall determine what functions shall be located at the International Headquarters, and what functions shall be performed elsewhere, subject to the approval of the General Executive Council.

- 4 -

**V. Officers and General Executive Council**

SMART shall have a General President and a General Secretary-Treasurer. It shall have 17 General Vice-Presidents of whom 6 will come from UTU including its International President, Assistant President, General Secretary and Treasurer, National Legislative Director and the two (2) senior Vice Presidents elected at the 2007 UTU Convention. The position of Assistant President and General Secretary and Treasurer shall be subject to attrition, and after attrition of each as described in Article VII, the next senior Vice Presidents will become SMART General Vice Presidents. The 17 General Vice Presidents shall constitute the SMART General Executive Council.

A Transportation Division will be created. All full-time UTU Vice Presidents elected at the 2007 Convention will become International Representatives and Organizers of SMART with functions of current UTU officers. The Division will be led by the UTU International President, whose title will be "President, Transportation Division." Also, within this Division will be the Bus Department, Yardmasters Department and Airlines Department. The SMART Rail and Shipyard Department and Transportation Division will negotiate national rail contracts together when applicable.

After the Effective Date, the UTU positions referred to hereinabove shall be filled by election in the manner prescribed in Section VI of this Agreement below, but only those members who hold active transportation seniority with a rail carrier, bus line or air line will be eligible to be nominated for any of these positions. If any of the original incumbents in these positions resigns, retires or dies before completing the term of office, the vacancy shall be filled from among the

other officers elected at the final UTU convention in 2007, in accordance with the UTU Constitution. The General President, General Secretary-Treasurer and the remaining 11 General Vice-Presidents shall be the SMWIA officers holding these positions immediately before the Effective Date. After the Effective Date, these positions shall be filled by election in the manner prescribed in the SMART Constitution.

## VI.  Transportation Division Convention

The Transportation Division shall hold its first convention immediately before the first SMART general convention in 2011. The delegates to the Transportation Division convention from local unions affiliated with the Transportation Division shall be the delegates to the SMART General convention. The Transportation Division convention shall by secret ballot elect officers for the positions listed in Article 21B of the SMART Constitution, as set forth in Article I. The Transportation Division convention may also recommend amendments to the SMART Constitution or recommend resolutions affecting members of the Transportation Division or of SMART generally, which shall be forwarded to the Constitution and Resolutions Committees, respectively, of the SMART general convention. The delegates to the Transportation Division convention may take up any other items of interest to the members of the Transportation Division, including education and legislative matters.

## VII.  Local Unions, Joint Boards and Other Chartered Bodies

Each chartered body of either SMWIA or UTU shall retain its charter as of the date of its original issue and become, by virtue of the merger, a chartered body of SMART. Should the charter numbers of local unions in SMART and UTU be the same, the Presidents may assign additional

identification to avoid confusion. The Presidents shall issue new charters to all SMWIA and UTU chartered bodies which will contain the date of their original chartering by SMWIA or UTU or their predecessor bodies. All future charters shall be issued in the name and authority of SMART.

The by-laws of the affiliates of SMWIA and UTU shall remain in full force and effect and, for a period of two years from the Effective Date, except to the extent that they conflict directly with the SMART Constitution. Under the supervision of the General President, all affiliates shall bring their by-laws into compliance with the SMART Constitution within two years of the Effective Date.

Current officers of the affiliates of SMWIA and UTU shall, upon the effective date of the merger, continue to serve in their elected capacities. The UTU's Assistant President, Secretary-Treasurer and 9th and 10th Vice Presidents as currently provided for in the existing UTU Constitution will attrite by the end of their term (2011).

After the Effective Date, all financial obligations of chartered bodies owed to SMWIA or to UTU shall be obligations of the chartered bodies owed to SMART.

## VIII.  Employees and Employee Benefits

No former SMWIA or former UTU employee who is employed by SMART shall experience any reduction in salary or allowances as a result of the merger. All former SMWIA or former UTU employees who are employed by SMART shall be credited with their service for SMWIA or UTU for all vacation and benefit purposes. Subject to approval of the appropriate unions for

union-represented SMWIA or former UTU employees, all former UTU employees with at least three years of service who desire to be employed by SMART after the discontinuance of UTU headquarters operations in Cleveland as of June 1, 2010 shall be permitted to transfer to the SMART International Headquarters for service in any vacancies for which they are qualified and shall have their service with UTU credited for seniority purposes.   These employees shall be reimbursed for reasonable relocation expenses.

All persons employed by SMWIA or UTU prior to the Effective Date shall continue to be covered by the current staff benefit programs of their respective Unions, such as pension, health insurance and life insurance.  All of the existing benefit programs for staff will continue.  Under the supervision of the General President and the President, Transportation Division, former employees of UTU who continue employment with SMART shall become participants in the benefit plans that were sponsored by SMWIA by no later than January 1, 2011 and employee benefit plans sponsored by UTU shall be terminated or, in the case of the pension plan, benefit accrual shall be frozen, as of that same date. All such former UTU employees shall at that same date become vested immediately in the pension benefits they accrue under the SMWIA-sponsored pension plans and shall have no waiting period for eligibility for benefits under the SMWIA-sponsored health plan.   Nothing in this Agreement shall be construed as a legal requirement for continuation of any benefit program for any period of time after the Effective Date, except where such legal obligation already exists.

Six of the officers elected at the final UTU Convention in 2007 will become General Vice-Presidents as provided in Article V of this Agreement.  The International President, Assistant

President, General Secretary and Treasurer and National Legislative Director of UTUIA will be paid by UTUIA with respect to work allocable to UTUIA. SMART shall consider employment of former employees of UTU, provided that they accept employment at the International Headquarters on terms and conditions substantially equal to or better than the average economic package enjoyed by them from the date of this Agreement until immediately before the Effective Date. These employees shall be reimbursed for reasonable relocation expenses.

## IX. Membership

All members of SMWIA and UTU shall be members of SMART upon the Effective Date. Wherever the enjoyment of any right or privilege is based on length of membership in SMART, previous membership in SMWIA or UTU shall be deemed membership in SMART. Members of SMWIA or UTU shall be deemed members of SMART without payment of any initiation or other membership fee, except membership obligations due and unpaid to either SMWIA or UTU upon the Effective Date.

All financial obligations of members of SMWIA or UTU for any period prior to the merger shall be payable on the basis of the applicable provisions of the Constitutions of the respective Unions and the constitutions and bylaws of the subordinate bodies of the respective Unions then in effect.

Membership dues to SMART shall be assessed in accordance with the SMART Constitution. The International portion of dues paid to SMART by former SMWIA affiliates shall be in accordance with the former SMWIA Constitution. The International portion of dues paid to SMART by former UTU affiliates (subordinate bodies) shall be the same as the financial

obligations due to UTU International Union from its members under the former UTU Constitution, subject to Article XII.

## X. Property

On the Effective Date, all the property, real, personal and mixed, and all right, title, and interest, either legal or beneficial, in any monies, funds, or property, tangible and intangible, of SMWIA and UTU, including, but not limited to, their respective separate names, trademarks, copyrights, labels, registrations, emblems, union shop cards, all claims and debts, known or unknown, now due or accruing in the future to each of them, all the rights, privileges and powers, and every other interest of each of them, of whatever kind or nature whatsoever shall, by virtue of the merger of SMWIA and UTU, be transferred to and vested in SMART. Title to any property, real, personal or mixed, legally or beneficially vested by deed or otherwise in SMWIA or UTU shall not be impaired by reason of the merger but shall in all respects be vested in SMART by virtue of the merger. SMART shall, on and after the effective date of the merger, assume and be responsible for all the debts, liabilities, contract obligations, and other obligations of SMWIA and/or UTU. The debts, liabilities, contractual and other obligations assumed hereunder shall, on the effective date of the merger, attach to SMART to the same extent as if the said debts, liabilities, contractual and other obligations were its original undertakings.

The General President and his designees are hereby empowered to take all necessary legal steps on behalf of SMART to amend or change all deeds, bonds, mortgages, titles, certificates, leases, contracts or agreements or other indicia of ownership or legal right or obligation in order to reflect the merger and the transfer of ownership and rights and obligations to SMART. The

Presidents and their designees are further empowered on behalf of SMART to notify all legal entities, government agencies and other forums of the merger and transfer of ownership, rights, obligations and functions to SMART.

It is agreed and understood that in the discussions leading to this merger, both SMWIA and UTU submitted for the other's review a full and complete schedule of assets and liabilities (both actual and contingent). Both SMWIA and UTU waive any claim or potential claim against the other for fraud, duress or concealment.

Upon the Effective Date, the General Funds of SMWIA and UTU shall be merged and shall become the General Funds of SMART. Upon the Effective Date, the Strike and Defense Funds of SMWIA and of UTU shall be merged and shall become the SMART Strike and Defense Fund. Further, any and all other designated funds held as part of the general treasuries of either SMWIA or UTU, except those as to which legal restrictions prevent their unencumbered transfer, shall become part of the general treasury of SMART.

## XI.  Rights and Obligations

The separate constitutions of SMWIA and UTU shall continue in effect after the Effective Date for the limited purpose of completing the merger and fulfilling the undertakings of this Merger Agreement and the SMART Constitution. Article 21 of the SMWIA Constitution will become Article 21A of the SMART Constitution. The UTU Constitution will become Article 21B of the SMART Constitution to the extent not in conflict with the current SMWIA Constitution or the terms of this Agreement. To the extent necessary to implement this Merger Agreement, the

General Executive Council of SMWIA and the Board of Directors of UTU shall be deemed to remain in existence, and during such time the officers of each Union shall retain the power, right, privilege, and authority incidental and necessary to carry out this Merger Agreement, including, but not limited to, the power to deal with the property or assets of each such Union, and they shall be authorized and empowered to execute and deliver or cause to be executed and delivered, any necessary deed, document, or other instrument.

Nothing in this Merger Agreement or in the SMART Constitution shall affect the rights of SMWIA or UTU's chartered bodies in and to their respective assets and rights of representation.

SMART shall be deemed to be a consolidation of SMWIA and UTU. The merger of SMWIA and UTU shall not affect, interrupt, or change in any way the continuing status, or the rights or duties with respect to third persons, of either SMWIA or UTU or their affiliates. It shall not impair the status of these organizations in any pending action or proceedings or any right, title, or interest in any property or arising from any deeds, bonds, mortgages, leases, or contracts or agreements of any kind whatsoever, including, but not limited to, recognition agreements and collective bargaining agreements or the continuity or renewal thereof. Nor shall it impair any federal, state, provincial, territorial, or commonwealth certification or any representational rights or any other separate rights or obligations of such organizations under their existing collective bargaining agreements or checkoff authorizations. All authority, power and rights, jurisdictional and otherwise, held by or vested in SMWIA and/or UTU under or in connection with any charter or affiliation with the AFL-CIO and CLC shall be automatically vested in SMART.

The merger of SMWIA and UTU is not intended to affect the existence, continuation, sponsorship, administration or any other aspect of the establishment or operation of any employee welfare or pension benefit plan for employees represented by either SMWIA or UTU or their respective affiliates. As of the Effective Date, SMART shall be deemed the union sponsor of any such plan sponsored by either SMWIA or UTU as of the time immediately before the Effective Date. SMART shall be vested with all powers under the respective trust agreements establishing the trusts holding the assets of such plans which were as of the time immediately before the Effective Date vested in either SMWIA or UTU. All such powers shall be exercised by the General President.

## XII. Arbitration

In the event of any dispute or controversy arising out of or under this Agreement, such dispute or controversy shall be referred to the SMWIA General President and the International President of the UTU (or, if the dispute or controversy arises after the Effective date, the SMART General President and the SMART President, Transportation Division for conference and resolution). If they are unable to resolve the dispute or controversy, it may be submitted by either officer, and no one else, to arbitration by an arbitrator appointed by the President of the AFL-CIO. The decision of such arbitrator on the disputed matter shall be final and conclusive on all parties and may be enforced in any court of competent jurisdiction.

The arbitrator's power shall be limited to the application and interpretation of this Agreement. The arbitrator shall have no power or authority to rescind, alter, amend, or modify any of the provisions of this Agreement.

Arbitration under this agreement shall be the exclusive remedy for any dispute hereunder, and the right to obtain such arbitration shall be a complete defense to any action at law or in court or in any other tribunal to enforce, modify, construe, or assert any right under this Agreement. The arbitrator shall have the power to require the attendance of any party to a dispute hereunder or of any witness whose testimony may be relevant to the arbitration of such dispute and to subpoena books, records, and other instruments relative to such dispute.

Each party will bear its own costs and will share equally the fees and expenses of the arbitration, provided that if the arbitration proceeding occurs after the Effective Date, all costs shall be borne by SMART.

The laws of the District of Columbia shall be deemed to govern the interpretation and performance of this Agreement.

## XIII.  Amendment Procedure

In recognition of the inability to anticipate all future developments, this Merger Agreement may be amended with the approval of the General President, the President, Transportation Division and a vote of seventy-five percent (75%) of the General Executive Council.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals this 8ᵗʰ day of *August*, 2007.

By: *Michael J. Sullivan*
     General President

By: *Paul C. Thompson*
     International President